STEINFELS, Appellant,

v.

OHIO DEPARTMENT OF COMMERCE, DIVISION OF SECURITIES, Appellee.

[Cite as *Steinfels v. Ohio Dept. of Commerce, Div. of Securities* (1998), 129 Ohio App.3d 800.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–470.

Decided Sept. 17, 1998.

*Robert J. Behal,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Stephen H. Johnson,* Assistant Attorney General, for appellee.

TYACK, Judge.

On February 28, 1995, the Ohio Department of Commerce, Division of Securities ("division") issued an order, a notice of intent to issue a cease and desist order, and a notice of opportunity of a hearing to Victor E. Steinfels III. An amended order was issued on or about March 15, 1995, alleging that Steinfels violated R.C. 1707.44(B)(4) and (G). The order arose out of a division investigation into the activities of Steinfels in regard to the sale of certain partnership units to Steven A. Miller and the then Palmer–Miller Insurance Agency ("Palmer–Miller").

Steinfels requested a hearing. On September 7, 1995, a hearing was held before a hearing officer. On January 3, 1996, the hearing officer's report and recommendation was mailed to Steinfels. The report and recommendation concluded that Steinfels violated R.C. 1707.44(B)(4) and (G) and recommended that a cease and desist order be issued against Steinfels.

On March 29, 1996, the division issued a final order approving the hearing officer's recommendation and ordering Steinfels to cease and desist from the acts and practices that violate the Ohio Securities Act. Steinfels appealed the final order to the Franklin County Court of Common Pleas.

On February 3, 1998, the common pleas court rendered its decision, finding that the division's order was supported by reliable, probative and substantial

evidence and was in accordance with law. A judgment entry was journalized on March 25, 1998.

Steinfels ("appellant") has appealed to this court, assigning the following as error:

"The trial court erred to the prejudice of appellant, in finding that reliable, probative and substantial evidence supported the finding of the appellee at the administrative level that the appellant made material misrepresentations or non-disclosures in connection with the sale of a security, in violation of Section 1707.44(B)(4) and (G) O.R.C., when such finding was against the manifest weight of the evidence and contrary to law."

We note first the varying standards of review for the common pleas court and this court. R.C. 119.12 states:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

The common pleas court engages in two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 470, 613 N.E.2d 591, 595. However, an appellate court's role is more limited. While it is incumbent upon the common pleas court to examine the evidence, that is not the charge of the appellate court. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241, quoting *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–268. The appellate court determines only whether the trial court abused its discretion. *Rossford Exempted,* at 707, 590 N.E.2d at 1241. However, on purely legal questions, the appellate court's review is plenary. *McGee v. Ohio State Bd. of Psychology* (1993), 82 Ohio App.3d 301, 305, 611 N.E.2d 902, 904–905, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

By way of background, this case arose out of the sale by appellant of two partnership units in Vesmont Partners Ltd. ("Partners") to Miller and his company, Palmer–Miller. Appellant had created a drink mug in the shape of a football helmet. Appellant had formed Vesmont Management Group, Inc. ("Vesmont"), a corporation that engaged in the manufacture of the mug. Appellant was the majority shareholder, chairman of the board and chief executive officer of

Vesmont. Vesmont was the general partner of Partners, a limited partnership that was formed to help raise capital for Vesmont.

Part of the offering materials given to Mr. Miller prior to the sale of the partnership units included an agreement between Vesmont and appellant. This agreement included terms relating to the patent rights to the mug. This agreement ("the third agreement") included provisions whereby appellant assigned his rights to any patent or pending patent to the mug to Vesmont, and Vesmont had sole and exclusive patent rights in the mug. Miller testified that it was of paramount importance to him that Vesmont have the patent rights to the mug. On or about July 15, 1992, Miller signed a subscription agreement for one unit in Partners and on or about July 22, 1992, Miller, individually, bought one unit in Partners for $25,000. Patents had not yet been issued on the mug, but a patent application was pending.

Vesmont began having financial difficulties and by September 1, 1993, appellant had signed proxies which effectively gave control of Vesmont to Robert Cseplo, the owner of certain molds used to produce the mugs. According to appellant, he feared that Cseplo and Bret Adams, both of whom had assumed control of Vesmont's board of directors, would abscond with any patent rights to the mug. Therefore, on March 22, 1994, appellant sent Vesmont a letter, notifying it that appellant was terminating the agreement between appellant and Vesmont, including termination of Vesmont's "right to use the helmet mug design."

The "agreement" appellant referred to in the March 22, 1994 letter had been executed prior to the third agreement discussed above. This original agreement between Vesmont and appellant ("the first agreement") differed from the third agreement shown to Miller. Such differing terms included: appellant (not Vesmont) had sole and exclusive rights to the mug; a payment of $250,000 by Vesmont to appellant on or before June 30, 1992, a royalty payment by Vesmont to appellant of one percent of Vesmont's gross receipts from the sale of mugs, and the right of either party to terminate the agreement due to material breach. Again, none of these terms were part of the third agreement shown to Miller.

In August 1994, a patent was issued. Sometime in 1994, after the March 22, 1994 termination letter, appellant assigned his rights to any patent and/or pending patent to his sister's company, which had been marketing the mug in the Texas area.

As indicated above, the hearing examiner concluded that appellant, in selling the partnership units (which are considered securities under the applicable statutes) to Miller, violated R.C. 1707.44(B)(4) and (G). R.C. 1707.44(B)(4) states:

"(B) No person shall knowingly make or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any

prospectus, circular, description, application, or written statement, for any of the following purposes:

" * * *

"(4) Selling any securities in this state."

The hearing examiner concluded that appellant violated R.C. 1707.44(B)(4) because appellant made false representations regarding patent rights and the early termination provision. The hearing examiner found that Miller believed, based upon appellant's representations, the patent was already in existence and had been assigned to Vesmont or that appellant personally had a right to the pending patent and that Vesmont owning the patent rights was of paramount importance to Miller. The hearing examiner also concluded that appellant did not disclose the existence of the early termination provision (in the first agreement) to Miller.

The trial court stated that appellant portrayed to Miller that Vesmont had the rights to any pending patent, but appellant assigned the patent rights to another company. The trial court found that appellant's representations to Miller regarding the patent rights were hollow promises because appellant relied on the third agreement only when it suited him and, at other times, relied on the first agreement. The trial court concluded that an affirmative misrepresentation occurred because appellant indicated to Miller that the third agreement was the operative agreement, the provisions of the third agreement did not in fact apply, and Vesmont did not hold the patent rights. We note that the trial court stated earlier that it would likely find that the third agreement was the operative agreement, but appellant never conducted himself as though it was.

In *State v. Warner* (1990), 55 Ohio St.3d 31, 564 N.E.2d 18, paragraph two of the syllabus, the Supreme Court held:

██ "R.C. 1707.44(B)(4) and (J) prohibit only affirmative misrepresentation; they do not apply to fraudulent nondisclosure."

As indicated above, the hearing examiner concluded that appellant violated R.C. 1707.44(B)(4), in part, because appellant did not disclose the early termination provision contained in the first agreement. However, this cannot, as a matter of law, be the basis for a finding of a violation of R.C. 1707.44(B)(4) as such conduct constitutes a failure to disclose, not an affirmative misrepresentation. Hence, the hearing examiner erred in concluding that appellant violated R.C. 1707.44(B)(4) by failing to disclose the early termination provision contained in the first agreement.

This leaves us with the issues surrounding the representations by appellant regarding patent rights. As to this, appellant did make affirmative representa-.

tions. Appellant represented to Miller that Vesmont had the rights to any patent, and that such rights had been assigned to Vesmont by appellant. Appellant contends that at the time of the sale to Miller, such representations were true, and actions appellant took in 1994 due to a change in circumstances cannot be used to show what occurred at the time of the sale to Miller.

■ It appears to this court that the hearing examiner and trial court, judging appellant's credibility and making inferences based on appellant's actions in 1994, concluded that appellant, at the time of the sale to Miller, did not believe that the third agreement was the operative agreement and that Vesmont did not necessarily have the patent rights. However, the issue is whether appellant, in telling Miller that Vesmont had the patent rights and showing Miller the third agreement, which assigned any patent rights to Vesmont, made a false representation. In other words, even if appellant did assign patent rights to another company and not Vesmont in 1994, was it false in 1992 to represent that Vesmont had the rights to any patent? The answer to this question requires a determination of which agreement was operative in July 1992.

There is little evidence on this issue. Essentially, the only evidence on this issue is the agreements themselves. The third agreement contains a supersedure clause stating that it superseded the earlier agreement of "even date." Both agreements (and a second, draft agreement) were, by their terms, effective January 1, 1992. Given this, we can only conclude that the third agreement was and remains the operative agreement. This third agreement expressly assigned to Vesmont any patent and/or pending patent rights to the mug.

As a result, it was not a false representation when appellant told Miller that Vesmont had the patent rights. Pursuant to the third agreement shown to Miller, the operative agreement, Vesmont did have the rights to any patent or pending patent. Hence, the trial court erred as a matter of law in concluding that there was reliable, probative and substantive evidence that appellant made a false representation regarding patent rights. Accordingly, the trial court erred in affirming the division's order finding that appellant violated R.C. 1707.44(B)(4).

■ We now turn to the trial court's conclusion that appellant violated R.C. 1707.44(G). R.C. 1707.44(G) states:

"No person in selling securities shall knowingly engage in any act or practice which is, in sections 1707.01 to 1707.45 of the Revised Code, declared illegal, defined as fraudulent, or prohibited."

R.C. 1707.01(J) states:

" 'Fraud,' 'fraudulent acts,' 'fraudulent practices,' or 'fraudulent transactions' means anything recognized on or after July 22, 1929, as such in courts of law or

equity; any device, scheme, or artifice to defraud or to obtain money or property by means of any false pretense, representation, or promise; any fictitious or pretended purchase or sale of securities; and any act, practice, transaction, or course of business relating to the sale of securities which is fraudulent or which has operated or would operate as a fraud upon the purchaser."

R.C. 1707.44(G) prohibits not only affirmative misrepresentation but, also, fraudulent nondisclosure where there is a duty to disclose. *Warner, supra,* 55 Ohio St.3d 31, 564 N.E.2d 18, at paragraph three of the syllabus.

The hearing examiner concluded that appellant represented to Miller that Vesmont did not owe appellant a one-percent royalty, that Vesmont did not owe appellant $250,000, and that the patent was already in existence and had been assigned to Vesmont or, at a minimum, that appellant personally had a right to the pending patent. We note first that as to Miller's knowledge of whether a patent had in fact been issued, the trial court correctly stated that the ultimate issue was that appellant had represented to Miller that Vesmont held the right to any pending patent. As indicated above, this representation by appellant was in fact true, given the operative third agreement and, therefore, the representation was· not false and cannot be the basis for a violation under R.C. 1707.44(G).

As to the hearing examiner's conclusions that appellant represented to Miller that Vesmont did not owe appellant a one-percent royalty and that appellant was not owed $250,000, there is no evidence supporting these conclusions. Indeed, there was no affirmative representation by appellant regarding these matters at all. Rather, the complaint really is that appellant failed to disclose to Miller the existence of the first agreement. Such a failure to disclose could be the basis for a violation under R.C. 1707.44(G).

■■ As indicated above, R.C. 1707.44(G) prohibits fraudulent nondisclosure where there is a duty to disclose. *Warner,* 55 Ohio St.3d 31, 564 N.E.2d 18, at paragraph three of the syllabus. Indeed, when an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak. *Id.* at 54, 564 N.E.2d at 39–40, quoting *Chiarella v. United States* (1980), 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348, 360–361. The duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. *Id.* at 54, 564 N.E.2d at 39–40.

■ The term "fiduciary relationship" has been defined as a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. *Ed Schory & Sons, Inc. v. Society Natl. Bank* (1996), 75 Ohio St.3d 433, 442, 662 N.E.2d 1074, 1081–1082, quoting *In re Termination of*

*Emp. of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 516–517, 321 N.E.2d 603, 608–609.

Here, there is no evidence that a fiduciary relationship or other similar relationship of trust and confidence existed between appellant and Miller. Indeed, the evidence shows that this was an arm's-length transaction in which Miller actively participated. We note that Miller examined the third agreement and noted the existence of the supersedure clause.

Given this, there was no duty on appellant's part to disclose to Miller the existence of the first agreement. Therefore, the failure of appellant to so disclose cannot, as a matter of law, be the basis for a finding of a violation of R.C. 1707.44(G). Accordingly, the trial court erred as a matter of law in finding that the division's order adopting the recommendation of the hearing examiner regarding a violation of R.C. 1707.44(G) was supported by reliable, probative and substantial evidence and was in accordance with law.

In summary, and for the reasons stated above, the trial court erred as a matter of law in finding that the division's order was supported by reliable, probative and substantial evidence and was in accordance with law. Therefore, appellant's sole assignment of error is sustained.

Having sustained appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this cause to the common pleas court with instructions to remand the cause to the division with instructions to vacate its cease and desist order.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and LAZARUS, JJ., concur.