OPINION
Appellant, Akron City School District Board of Education ("Akron"), appeals from a judgment of the Franklin County Court of Common Pleas affirming resolutions of the State Board of Education ("state board") that (1) found Akron had not demonstrated it was impractical or unreasonable to provide transportation to students that attended Edge Academy ("Edge") or Ida B. Wells Community School ("Wells"), and (2) ordered Akron to repay Edge and Wells for direct expenses the two community schools incurred in providing transportation for their students during the 1999-2000 school year. The parents of students that attended two other sites of a community school, who were parties in the appeal before the common pleas court, are not parties in this appeal.
Both Edge and Wells are community schools created primarily to serve elementary school children. During the developmental phase of the two community schools, the state department of education assured the co-developers that Akron was required to provide transportation services for their students. On June 28, 1999, however, Akron adopted a resolution that instead authorized transportation reimbursement to parents of children enrolled in community schools. Later, on August 9, 1999, Akron adopted a resolution that declared transportation of community school students impractical and authorized "payment in lieu of transportation" contracts with parents of community school students.
In response to Akron's announcement and in anticipation of Edge's scheduled opening on August 23, 1999, Susan and David Dudas, co-developers of Edge, quickly needed to find alternate transportation for their students. Edge contracted with Laidlaw Transit, at an unbudgeted cost of $50,000 for the school year, to provide transportation for its students. Later a monitor was added and the transportation cost was adjusted to approximately $55,000 for the year.
Similarly, after learning that Akron would not provide transportation to community school students, Dr. Edward Crosby and Jean Calhoun, co-developers of Wells, also quickly needed to arrange transportation for students scheduled to attend the new community school. Wells contracted with Laidlaw Transit to provide transportation for its students, and Dr. Crosby, one of Wells' co-developers, secured the agreement with a mortgage on his home. Because of the controversy concerning the transportation situation, some students did not enroll in Wells. Certain programs, food service, and supply purchases, including computers and workbooks, were reduced or cut from Wells' budget due to the unbudgeted transportation expense. Wells' total cost for transportation services was approximately $64,000.
Parents of students attending Edge and Wells that did not accept Akron's contract in lieu of transportation were given an opportunity to request an administrative hearing before the state board pursuant to R.C. Chapter 119. Following the hearing, the hearing officer issued a report and recommendation that (1) found Akron had not demonstrated it was impractical or unreasonable to provide transportation to students that attended Edge and Wells, and (2) ordered Akron to repay Edge and Wells for direct expenses the two schools incurred in providing transportation for their students during the 1999-2000 school year. The state board subsequently adopted the hearing officer's report and recommendation. Akron timely appealed to the Franklin County Court of Common Pleas. The common pleas court affirmed the state board's order. Akron timely appeals and assigns a single error:
 The Trial Court erred in holding that the State Board of Education's "order" was "supported by reliable, probative and substantial evidence and is in accordance with law" to the extent that the State Board of Education ordered the Akron City School District Board of Education to reimburse the Edge Academy and Ida B. Wells Academy for expenses incurred by those schools to transport students during the 1999-2000 school year.
Preliminarily, Edge and Wells contend Akron's appeal must be reviewed under a plain error standard because Akron failed to properly preserve for appeal the issue raised in its assignment of error. "A `plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209. Here, plain error does not apply because Akron directly or indirectly raised the issue of the state board's authority to order Akron to pay for transportation expenses in its post-hearing brief, in its objections to the hearing officer's report and in its brief before the common pleas court.
Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280.
The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, supra, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra, at 111.
An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Ohio Supreme Court noted:
 *** While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or trial court. Instead, the appellate court must affirm the trial court's judgment.
An appellate court, however, has plenary review of purely legal questions. Steinfels v. Ohio Dept. of Commerce, Div. of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999),84 Ohio St.3d 1488; McGee v. Ohio State Bd. of Psychology (1993),82 Ohio App.3d 301, 305, citing Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus, rehearing denied, 63 Ohio St.3d 1459.
In its assignment of error, Akron essentially argues that the state board acted ultra vires when it ordered Akron to reimburse Edge and Wells for direct expenses incurred in providing transportation for their community school students during the 1999-2000 school year.
At the outset, Akron contends the Edge and Wells schools were not parties to the R.C. Chapter 119 administrative hearing. In separate resolutions dated September 15, 1999, for considering Akron's determination of impracticability, the state board declared "its intent *** to notify said district and other affected parties of their right to a hearing pursuant to Chapter 119 of the Ohio Revised Code." (Emphasis added.) Moreover, at the R.C. Chapter 119 hearing, Akron's counsel admitted that the Edge and Wells community schools were parties. See Tr. 10. ("HEARING OFFICER ST. CLAIR: *** Any procedural matters we need to discuss before we take our first witness? Mr. Kelly? MR. KELLY: I'm not sure that Edge and Ida B. Wells, the parties, as represented, have stipulated to the admissibility of State Exhibits 1 through 20; and I guess, technically, we haven't"). (Emphasis added.)
In addition, the hearing officer's report and recommendation is captioned "In the matter of," with Akron's superintendent Brian Williams identified as the petitioner and the parents of Edge and Wells students identified as respondents. "In re" or "in the matter of" pertains to judicial proceedings that do not formally include adverse parties, but rather involve something, as an estate. See Black's Law Dictionary (7 Ed.Rev. 1999) 796. In this case, the matter was whether transportation of the students of Edge and Wells community schools was impracticable, a matter involving the schools under the somewhat unique facts of this case. Akron's contention that the Edge and Wells schools were not parties to the administrative hearing is not well-taken.
Pursuant to R.C. 3314.01(B), "[a] community school *** is a public school, independent of any school district, and is part of the state's program of education." Former R.C. 3314.09 required a local board of education to provide transportation to its native students who were enrolled in a community school unless the local school board determined, and the state board confirmed, such transportation was unnecessary or unreasonable. If, in the judgment of the local school board, the transportation was unnecessary or unreasonable and the state board confirmed that determination, a local board of education might, in lieu of providing the transportation, pay a parent, guardian, or other person in charge of the child a statutorily determined amount. See, also, R.C.3327.01 (concerning local school districts' obligation to provide transportation to kindergarten through eighth grade students).
Here, in contravention of former R.C. 3314.09, and notwithstanding correspondence from the state department of education that informed Akron it had the responsibility to provide transportation while it awaited the state board's determination concerning impracticality, Akron did not provide transportation to students from Edge and Wells community schools. Moreover, the hearing officer's report and recommendation found that "[i]n neither resolution did Akron Public Schools address the specific transportation needs of any community school student. Instead, Akron's board of education made a class-wide determination that it was impractical to transport all students to and from community schools, including those attending the Edge Academy and Ida B. Wells." (RR 9, no. 9.) (Emphasis sic.) The hearing officer concluded that "[t]he clear language of the statute requires a student-by-student assessment of practicality before payment in lieu of transportation is appropriate." (RR, 45.)
We agree that former R.C. 3314.09 required a student-by-student assessment rather than a class-wide assessment, and Akron does not challenge that issue on appeal. See former R.C. 3314.09 ("Where it is impractical to transport a pupil to and from a community school *** a board may, in lieu of providing the transportation, pay a parent, guardian, or other person in charge of the child." (Emphasis added.)
Because Akron acted contrary to former R.C. 3314.09 in its failure to perform a student-by-student assessment and in refusing to transport community school students from Edge and Wells schools during the pendency of the state board's determination, the appeal resolves to whether the state board acted within its scope of authority in ordering Akron to repay Edge and Wells community schools for direct transportation expenses for the 1999-2000 school year.
Akron contends former R.C. 3314.09 vested the right to receive payment in lieu of transportation to the parents and guardians of community school students, and not to the community schools. Indeed, former R.C.3314.09 provided, in part: "Where it is impractical to transport a pupil to and from a community school by school conveyance, a board may, in lieu of providing the transportation, pay a parent, guardian, or other person in charge of the child." (Emphasis added.) See State ex rel. Paluf v. Feneli (1994), 69 Ohio St.3d 138, 143, remanded (1995), 100 Ohio App.3d 461
("If certain things are specified in a law, contract, or will, other things are impliedly excluded"). The statute, however, did not address whether a local board, in lieu of providing transportation, might be directed to pay a community school or reimburse a community school for incurred transportation expenses. See State ex rel. Jackman v. Court of Common Pleas of Cuyahoga County (1967), 9 Ohio St.2d 159, 164 ("*** the maxim, expressio unius est exclusio alterius, is not a rule of law but rather a rule of construction used as a tool to cut through ambiguities to lay bare the intendment of a provision. *** It follows that such a tool must be put aside when contrary facts and circumstances are known"). (Citations omitted.)
Akron's argument ignores the statutory language that provided payment in lieu of transportation if the local board's determination of impracticability was approved by the state board. Here, the state board did not uphold Akron's determination of impracticability. More significant, however, is Akron's flagrant disregard for the provisions of former R.C. 3314.09 that reflected the legislature's public policy and the local board's statutory duty to provide transportation for community school students pending a determination of impracticability by the state board. See Hartley v. Berlin-Milan Local School Dist. (1982),69 Ohio St.2d 415, 416 (interpreting R.C. 3327.01, similar in wording to former R.C. 3314.09, and noting that "transportation is the rule and payment is the exception").
Had Akron complied with the requisites of that statute, it may have had the concomitant opportunity to invoke any constraints of former R.C.3314.09, such as payment to the parent, guardian, or other person in charge of the child. Because Akron chose to ignore the provisions of former R.C. 3314.09 that "address the specific transportation needs of any community school student," and instead made "a class-wide determination that it was impractical to transport all students to and from community schools," (RR 9), Akron cannot now appeal to the provisions of that statute in an attempt to limit the remedy the state board can construct to address Akron's actions. (RR, 9.) (Emphasis sic.)
Rather, because former R.C. 3314.09 was never called into play due to Akron's disregard of it, the general powers of the state board are available to address Akron's blanket refusal to transport the community school students despite the practicality of doing so. By statute, the state board is charged with the responsibility to "administer the educational policies of this state relating to *** transportation of pupils ***." Former R.C. 3301.07(B). Without question, the policy of the state requires local school districts to provide transportation to community school students within their districts, as evidenced by former R.C. 3314.09. Here, the state board concluded Akron had failed to meet that education policy and statutory mandate.
Akron, for its part, contends that Edge and Wells "volunteered" to make transportation arrangements and the schools are "simply trying to exploit the Chapter 119 hearing regarding practicality to force Akron to pay for a business decision they made." (Appellant's brief, 7.) Akron's arguments are not persuasive. Akron's refusal to transport community school students based on a claim of impracticality announced just prior to the opening of Edge and Wells schools left Edge and Wells with no practical alternative but to arrange transportation for their students. But for Akron's ill-timed announcement that created the transportation emergency, Edge and Wells community schools would not have found themselves in the predicament that necessitated the "voluntary" private transportation agreements.
In the final analysis, had Akron followed the procedure in former R.C.3314.09, the resolution of the issue would have been provided by that statute. Because Akron disregarded its obligation under the statute, the answer to the circumstances Akron created was not confined by the statutory remedies set forth in former R.C. 3314.09. Given the class-wide "injury," the state board, under the authority granted it by former R.C.3301.07, could address and resolve the issues that contradicted the state's transportation policy. The state board's solution is reasonable, given its findings regarding Akron's conduct.
We recognize the Supreme Court of Ohio has stated the state board lacks enforcement power. Haig v. Ohio State Bd. of Edn. (1992),62 Ohio St.3d 507, 510 ("[T]he state board has no authority to enforce the local board's duty to provide transportation"). Just as in Haig the state board could not force the local school district to provide the mandated transportation, so the state board here lacks the authority to force Akron to pay the money the state board has determined is owing as a result of Akron's conduct. Nonetheless, the state board's determination has been upheld and is subject to enforcement in the appropriate forum with the appropriate parties joined in that action. See Id. (suggesting the possibility of enforcing the state board of education's order through a R.C.119.12 appeal); cf. Garfield Hts. City School Dist. v. State Bd. of Edn. (1992), 85 Ohio App.3d 117, 124, jurisdictional motion overruled,65 Ohio St.3d 1458 (suggesting the possibility of enforcing the state board of education's order through a separate action).
Accordingly, we overrule Akron's single assignment of error. Under the circumstances of this case, the state board, pursuant to the authority granted it by R.C. 3301.07, resolved the problem Akron created in its disregard for former R.C. 3314.09. Because the state board, within the parameters of its statutory authority, resolved the transportation issue in a manner consistent with the public policy mandate of former R.C.3314.09, the common pleas court did not abuse its discretion in finding the state board's order is supported by reliable, probative, and substantial evidence and is in accordance with law. We therefore affirm the judgment of the common pleas court.
Judgment affirmed.
TYACK, P.J., and PETREE, J., concur.