OPINION
{¶ 1} Appellee-appellant, Ohio Liquor Control Commission ("commission"), appeals from a judgment of the Franklin County Court of Common Pleas reversing an order of the commission that directed appellant-appellee, Jimmie Shelton dba Manns Lounge, to either pay a forfeiture in the amount of $5,000 or serve a 50-day suspension. Because the common pleas court abused its discretion in reversing the commission's order, we reverse and remand the matter with instructions to reinstate the commission's order.
 {¶ 2} According to stipulated evidence, for approximately 11 months prior to November 2000, law enforcement authorities had been investigating Child Care Foundation, Inc. ("Child Care Foundation"). Investigation revealed that Child Care Foundation, through another entity, allegedly had been distributing tip tickets under a scheme that allowed splitting of profits from tip ticket sales between Child Care Foundation and liquor permit holders. "Tip tickets are games comparable to instant winner games conducted by the Ohio Lottery Commission. * * * A tip ticket purchaser opens the ticket to determine whether it reveals a symbol indicating that she or he has won money." Amvets Post 1983 Schneider Hume, Inc. v. Ohio Liquor Control Comm. (Feb. 13, 2001), Franklin App. No. 00AP-480, dismissed, appeal not allowed,92 Ohio St.3d 1414. Under the Child Care Foundation scheme, a permit holder received two boxes of tip tickets. The first box of tip tickets was sold with the profits being returned to the Child Care Foundation; the permit holder retained the profits from the sale of the second box.
 {¶ 3} On November 3, 2000, in response to a request from the director of the Ohio Department of Public Safety ("department"), Robert Anderson and Stephen Stocker, department agents, visited Manns Lounge in Lincoln Heights, Ohio. With Stocker maintaining a surveillance position in the parking lot outside the permit premises, Anderson posed as a patron and ordered tip tickets and a beverage from the barmaid, Robin Gamble. A Child Care Foundation sign was posted behind the bar in plain view. After Anderson paid $5 to the barmaid for five tip tickets, the barmaid put the payment in a drawer beneath the tip ticket bin. None of the tip tickets sold to Anderson were winning tickets. Anderson then ordered five more tip tickets; none contained a winning combination. Afterward, Anderson exited the premises and retained one spent tip ticket as evidence.
 {¶ 4} On November 29, 2000, authorities revisited the permit premises and issued a violation notice, alleging that, based on the department's investigation of Manns Lounge on November 3, 2000, Shelton permitted or allowed gambling on the permit premises.
 {¶ 5} The department served notice on Shelton, informing him that an administrative hearing would be held to determine whether Shelton's license should be suspended or revoked, or a forfeiture should be ordered. The notice of hearing alleged that Robin Gamble, Shelton's agent or employee, or both, permitted gaming on a game of skill or chance, namely tip tickets on permit premises, in violation of Ohio Adm. Code4301:1-1-53.
 {¶ 6} At the May 16, 2001 hearing before the commission, Shelton, through counsel, denied the charge against him but stipulated to the evidence and facts contained in an enforcement investigative report, which was admitted into evidence. The commission later issued an order finding Shelton had committed the alleged violation and directed Shelton to either pay a forfeiture in the amount of $5,000 or serve a 50-day suspension. Pursuant to R.C. 119.12, Shelton appealed the commission's order to the Franklin County Court of Common Pleas. The common pleas court granted Shelton's motion to stay execution of the commission's order pending a final determination of Shelton's appeal. On June 17, 2002, the common pleas court reversed the commission's order, concluding the commission's order is not supported by reliable, probative and substantial evidence. The commission appeals and assigns five errors:
 {¶ 7} "I. The lower court erred in determining that the commission's order rested on speculation or hearsay evidence.
 {¶ 8} "II. The lower court erred in interpreting Ohio Adm. Code4301:1-1-53 to require proof of profit.
 {¶ 9} "III. The lower court erred in determining that the record lacked evidence of gambling.
 {¶ 10} "IV. The lower court erred in requiring that the permit holder know of the illegality of the gambling.
 {¶ 11} "V. The lower court erred in reversing the commission's order and in determining that the order was not supported by reliable, probative and substantial evidence and was not in accordance with law."
 {¶ 12} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275,280.
 {¶ 13} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, supra,164 Ohio St. at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati at 111.
 {¶ 14} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied,67 Ohio St.3d 1439. In Pons, the Ohio Supreme Court noted, "While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court abused its discretion. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." Id. An appellate court, however, has plenary review of purely legal questions. Rossiter v. Ohio State Med. Bd. (Apr. 25, 2002), Franklin App. No. 01AP-1252; Steinfels v. Ohio Dept. of Commerce, Div. of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999),84 Ohio St.3d 1488.
 {¶ 15} Because the commission's five assignments of error are interrelated, we address them jointly. Together they assert the common pleas court erred in finding the commission's order is not supported by substantial, reliable and probative evidence.
 {¶ 16} In reversing the commission's order, the common pleas court noted:
 {¶ 17} "In the instant appeal, counsel for Appellant stipulated to the report. However, there is no indication that he stipulated that there were profits, but in fact disputed that there was evidence of profits. * * * Furthermore, there is no direct evidence that Appellant knew the tip ticket arrangement was illegal. The Court is cognizant that the strict rules of evidence do not apply in administrative hearings, including those before the Liquor Control Commission. * * * Nevertheless, there is still a requirement that the decision of the Commission rest upon quantum of evidentiary proof by a preponderance that is reliable, probative and substantial. The Order may not rest entirely upon speculation or hearsay evidence. * * * The record in this matter does not reflect that gambling was observed nor is there circumstantial evidence to make such assumption." (Decision filed May 16, 2002, 6-7.) See, also, Judgment Entry filed June 17, 2002 (adopting reasons set forth in the court's decision).
 {¶ 18} Ohio Adm. Code 4301:1-1-53(B) provides that "[n]o person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code." See former R.C. 2915.01(F)(2) (defining "gambling device" as "[a] ticket, token, or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet"); and former R.C. 2915.01(C) (defining "scheme of chance" as "a lottery, numbers game, pool, or other scheme in which a participant gives valuable consideration for a chance to win a prize").
 {¶ 19} In Big Bob's, Inc. v. Ohio Liquor Control Comm.,151 Ohio App.3d 498, 2003-Ohio-418, at ¶ 18, this court recently determined that "[b]ecause a tip ticket represents a chance in a scheme in which a participant gives valuable consideration for a chance to win a prize, a tip ticket is a `gambling device' pursuant to R.C. 2915.01(F)(2) and 2915.01(C), and therefore also under Ohio Adm. Code 4301:1-1-53(B)." See, also, Hurt v. State Liquor Control Comm. (Nov. 26, 1997), Montgomery App. No. 16232, appeal not allowed (1998), 81 Ohio St.3d 1467; Weller v. Ohio Liquor Control Comm., Franklin App. No. 02AP-333, 2002-Ohio-6308, at ¶ 18.
 {¶ 20} However, "[m]ere possession of a gambling device on a liquor permit premises does not constitute a violation of Ohio Adm. Code4301:1-1-53(B)." VFW Post 8586 v. Ohio Liquor Control Comm. (1998),83 Ohio St.3d 79, paragraph one of the syllabus. "To find a violation of Ohio Adm. Code 4301:1-1-53(B), the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C.2915.01(G)." Id., paragraph two of the syllabus. Nevertheless, unlike the quantum of evidence required for a criminal conviction, to support a violation of Ohio Adm. Code 4301:1-1-53 only proof by a preponderance of the evidence is required, id. at 81, and the commission may draw reasonable inferences based on the evidence before it. Id. at 82.
 {¶ 21} Pursuant to former R.C. 2915.01(G)(1), a gambling offense included a violation of former R.C. 2915.02. Under former R.C. 2915.02(A):
 {¶ 22} "No person shall do any of the following:
 {¶ 23} "* * *
 {¶ 24} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;
 {¶ 25} "* * *
 {¶ 26} "(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device." See, also, Gregory Temple, Inc. v. Ohio Liquor Control Comm., Franklin App. No. 02AP-515, 2002-Ohio-6628, at ¶ 17 ("a criminal conviction [under former R.C. 2915.02(A)(2)] could be sustained by establishing the elements of [1] promote or operate; [2] valuable consideration; [3] prize; or [4] profit").
 {¶ 27} The common pleas court determined the record lacks evidence Shelton knew the tip ticket arrangement was illegal. In Gregory Temple, this court addressed that issue, noting the stipulated evidence there included (1) an investigative report that indicated a sign on the wall of the permit holder's premises advertised the sale of tip tickets on behalf of Child Care Foundation, and (2) a report detailing how a barmaid offered tip tickets for sale. This court determined those facts created circumstances that did not require the liquor commission to establish directly that the permit holder knowingly violated Ohio Adm. Code4301:1-1-53(B). Id. at ¶ 18.
 {¶ 28} Here, as in Gregory Temple, the stipulated evidence indicates a Child Care Foundation sign was posted in the bar, and it includes a report detailing how a barmaid offered tip tickets for sale. Pursuant to Gregory Temple, the evidence did not need to directly demonstrate that Shelton knowingly violated Ohio Adm. Code 4301:1-1-53(B) to establish a violation of Ohio Adm. Code 4301:1-1-53.
 {¶ 29} The common pleas court also concluded the stipulated record lacked evidence that Shelton derived a profit from the tip ticket scheme. Former R.C. 2915.01(E) defined "scheme of chance conducted for profit" as "any scheme or game of chance designated to produce income for the person who conducts or operates the scheme or game of chance, but does not include a charitable bingo game." See, also, Loom Lodge 2156 Northfield v. Ohio Liquor Control Comm., Franklin App. No. 02AP-667, 2003-Ohio-38, at ¶ 14 (concluding that actual profit need not be shown to find a violation of Ohio Adm. Code 4301:1-1-53; instead, profit can be established by proof that gambling device produced income for permit holder).
 {¶ 30} Here, in addition to the permit holder's "stipulat[ing] to the evidence and the facts and the report contained therein" (Tr. 4.), Shelton's counsel admitted "[Shelton] got, and I'm not sure, either two or four boxes. He got one for free when he got the other one." (Tr. 5.) Shelton's counsel, however, also stated, "[Shelton] indicated to me and to the investigator that he didn't make any money on it because people were stealing from him." (Tr. 6.)
 {¶ 31} According to the enforcement investigative report that was admitted into evidence, the department, the Cincinnati Police Department, and the Hamilton County Sheriff's Office had been investigating the Child Care Foundation for approximately 11 months. Child Care Foundation "[had] been operating under the guise of a 501(C)(3) charity, and [had] been distributing tip-tickets in the Cincinnati area through a group named Kelly Distributing." (Enforcement Investigative Report, dated December 8, 2000, 2.) Moreover, "[e]vidence shows that certain permit holders and the Child Care Foundation Inc. are splitting proceeds from the sale of tip-tickets without the charity receiving the proper monies. The basic scheme entails the permit holder receiving two boxes of tip-tickets. The first box of tip-tickets are sold with the profits being returned to the Child Care Foundation. The second box of tip-tickets is sold to the permit holder for a fee. These tip-tickets are sold under the guise of the charity with the permit holder keeping the profits." Id. Based on that information, the director of the department requested an investigation of Shelton's permit premises, Manns Lounge, which occurred on November 3, 2000. Id.
 {¶ 32} In Merritt v. Ohio Liquor Control Comm., Franklin App. No. 02AP-709, 2003-Ohio-822, the evidence included "Instant Control" receipts and an agent's testimony based on an interview of the permit holder, who admitted he retained what he considered a legally permissible profit of 15 percent. Merritt determined the commission could reasonably conclude the permit holder, in an arrangement with Child Care Foundation, retained 50 percent of the proceeds from tip ticket sales and violated Ohio Adm. Code 4301:1-1-53. Id. at ¶ 30. Similarly, in Weller, this court reviewed evidence that included stipulated documentary evidence, an agent's testimony that the permit holder retained 15 percent of tip ticket sales as profit, as well as the permit holder's admission, through counsel, that the permit holder had the same deal as other Child Care Foundation clients. With that evidence, the court determined the commission could reasonably conclude the permit holder in an arrangement with Child Care Foundation retained up to 50 percent of the proceeds from tip ticket sales. Id. at ¶ 19-20.
 {¶ 33} Here, agent Anderson purchased tip tickets worth $10, failing to receive a winning ticket, and the barmaid kept Anderson's $10 outlay. Consequently, from the $10 outlay, Shelton received $10 in income. See Loom Lodge 2156 Northfield at ¶ 14 (noting profit can be established by proof that gambling device produced income for permit holder). See, also, Big Bob's at ¶ 29. More significantly, however, Shelton admitted through counsel that, as in Weller and Merritt, Shelton had participated in the two-box arrangement Child Care Foundation promoted. As in Weller and Merritt, the commission reasonably could infer that Shelton retained 50 percent of the profit from the sale of the tip tickets.
 {¶ 34} Moreover, even if Shelton's counsel had argued that Child Care Foundation qualified as an exempt organization under former R.C.2915.02(D), Shelton proffered no evidence demonstrating Child Care Foundation qualified as an exempt organization. See Hurt, supra ("As a general matter, we agree * * * that the burden of proof under the charitable exception lies with the party charged under R.C. 2915.02"). See, also, Ohio Adm. Code 4301:1-1-53(D) (noting Ohio Adm. Code 4301:1-1-53
shall not be construed to prohibit a game or contest provided there is strict compliance with R.C. 2915.02[D]).
 {¶ 35} In the final analysis, the record contains reliable, probative and substantial evidence supporting the commission's determination Shelton violated Ohio Adm. Code 4301:1-1-53. See VFW Post 8586 at paragraph two of the syllabus. Further, because R.C. 4301.25(A) grants the commission authority to suspend or revoke a liquor permit for violations of R.C. Chapter 4301 or 4303, or any commission rule, and R.C. 4301.252 grants authority to the commission to permit payment of a forfeiture in lieu of a suspension, the commission had the authority to suspend or revoke Shelton's permit and to allow Shelton to elect to pay a forfeiture. See FOE AERIE 2347 v. Ohio State Liquor Control Comm. (Dec. 27, 2001), Franklin App. No. 01AP-675.
 {¶ 36} Based on the foregoing, the common pleas court abused its discretion by concluding the commission's order is not supported by reliable, probative and substantial evidence, and the commission's five assignments of error are sustained. The judgment of the common pleas court is reversed, and this matter is remanded with instructions to reinstate the order of the Ohio Liquor Control Commission.
Judgment reversed and case remanded with instructions.
BOWMAN and TYACK, JJ., concur.