[Cite as *Drop Bar, L.L.C. v. Cleveland*, 2013-Ohio-4797.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99644**

# DROP BAR, L.L.C.

PLAINTIFF-APPELLANT

vs.

# CITY OF CLEVELAND

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-786809

**BEFORE:**   Keough, J., Boyle, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   October 31, 2013

**ATTORNEY FOR APPELLANT**

Sean P. Allan
Allan & Gallagher, L.L.P.
1300 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law
BY:   Patricia McGinty Aston
Assistant Director of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, J.:

{¶1} Plaintiff-appellant, Drop Bar, L.L.C., appeals the trial court's decision judgment affirming the Ohio Board of Building Appeals (the "Board"). For the reasons that follow, we affirm.

{¶2} On March 22, 2012, the city of Cleveland Fire Department issued a written citation to Tony George ("George"), as owner and responsible person for the Drop Bar. The citation specifies that Captain John McKenna inspected the Drop Bar property on March 8, 2012, and found the property to be in violation of the Ohio Fire Code. The citation itemizes ten alleged violations of the Code and assesses a proposed civil penalty for each violation ranging from $200 per day to $1000 per day. The citation further orders that the violations be abated "immediately." At the bottom of the citation, it states, "The violations were noted and brought to the attention of the owner on March 8, 2012. As of March 16, 2012, there had been no abatement." As a result of the citation being issued, the city of Cleveland assessed a total civil penalty against the Drop Bar in the amount of $65,800 — $4,700 per day for 14 days.

{¶3} The Drop Bar filed an appeal with the Board challenging the validity of the citation because it did not "fix a reasonable time for the abatement of the violation." The Board conducted a hearing where it heard the following evidence.

{¶4} Inspector John Petkac ("Petkac"), city of Cleveland's superintendent for the Bureau of Sidewalks, testified that on December 28, 2011, a letter was issued to George advising him that the Drop Bar's outdoor patio was not in compliance with the city's

codified ordinances for having an enclosed patio area in a public right-of-way. Subsequently on March 8, 2012, Petkac was notified about various alleged violations of the fire code regarding the enclosed patio area at the Drop Bar. Specifically, Petkac was notified that the bar had propane heaters inside the tented enclosed patio.

{¶5} Cleveland Fire Department Captain John McKenna ("McKenna") testified that he was notified by Petkac of these alleged violations. Accordingly, McKenna visited the Drop Bar on March 8 and confirmed the presence of the propane heaters and fuel cylinders within the enclosed patio. Although he did not immediately identify himself as being from the fire department, he notified the bartender at the bar that the heaters had to be removed and that the propane tanks could not be stored inside the building. McKenna did not issue a written citation.

{¶6} Nicole Austin ("Austin"), the Drop Bar's head bartender, testified that she was the bartender who spoke with McKenna on March 8. According to Austin, McKenna was not wearing a uniform, did not present her with a badge or business card, and did not provide her with any written order about the alleged violations. Austin testified that after McKenna left, she immediately called George, and told him about what had happened. He directed Austin to try to determine the identity of the individual. Austin testified that she located McKenna outside on the sidewalk and he gave her his business card. Austin testified that she told George that McKenna said that they could not use the heaters anymore. McKenna testified that he told Austin to have the owner call him if there were any questions.

{¶7} In the late morning of March 16, McKenna returned to the Drop Bar

establishment and saw that the propane heaters had not been removed from inside the enclosed patio. McKenna then contacted the owner of the building and notified him of the violations on the premises, but did not contact George. As on his prior visit, McKenna did not issue a written citation after this visit. McKenna testified that he took pictures of the enclosed patio and heaters while he was there on March 16, but was unable to recover them from his computer for the hearing before the Board.

{¶8} Austin testified that on March 16, the side curtains of the patio enclosure had been removed but the framed structure and overhead awning was still present. This testimony was consistent with an affidavit submitted by George from Tom Krupa with Northcoast Awning L.L.C., who stated that he removed the side curtains of the tented patio on March 16.

{¶9} On March 22, McKenna again returned to the Drop Bar and posted the written citation at issue on the door of the bar listing ten violations of the State Fire Code requiring "immediate" abatement of the hazards. He took additional pictures of the establishment when he posted the citation.

{¶10} George testified that he was advised by Austin on March 8 that McKenna told them not to use the heaters anymore. Accordingly, he told Austin not to use the heaters. George further testified that once he received written notice of the violations, he immediately contacted Paul Mills, who handles all his building and maintenance jobs, to remove the heaters and Krupa to remove the patio structure. Mills testified that he removed the heaters and capped off the gas lines on March 22. Additionally, Krupa's affidavit states that on March 22, he completed the removal of the remaining remnants of

the patio structure.

It is uncontested that all of the hazards were abated within 24 hours of receiving the citation.

**{¶11}** Thereafter, the city levied a civil penalty of $65,800 against the Drop Bar for the violations that existed from McKenna's first visit on March 8 through March 22, the date of the citation and abatement.  George testified that when he attempted to resolve the citation, the city would not reduce or waive the fine; rather, he was instructed to appeal the citation and penalty imposed.

**{¶12}** During the hearing, the Board reviewed photographs taken by Petkac on March 16, 2012, evidencing the tented patio attached to the front exterior of the Drop Bar and the existence of propane heaters and other heating devices located inside the patio.

**{¶13}**    Following a hearing, the Board upheld the citation, but reduced the fine to $4,000, which equated to approximately a one-day penalty for the violations.

**{¶14}**   The Drop Bar filed an administrative appeal with the court of common pleas, arguing that the Board erred in upholding the citation issued against it for violations of the Ohio Fire Code because the citation was void ab initio.   The Drop Bar requested, in the alternative,  that the fine be waived based on an alleged lack of reasonable opportunity to abate the violations.

**{¶15}** The trial court considered the matter on the record of proceedings from the Board, the briefs submitted by the parties, and the additional pictures taken by McKenna on March 16 and 22 that were not available for the hearing before the Board.   The trial

court issued a written decision affirming the Board's decision, including the modified penalty.

{¶16} The Drop Bar now appeals, contending in its sole assignment of error that the trial court erred in affirming the decision of the Board because the citation was void ab initio.

{¶17} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 1993-Ohio-122, 614 N.E.2d 748. In *Pons*, the Supreme Court of Ohio explained:

> While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment.

*Id*. at 621.

{¶18} An appellate court does, however, have plenary review of questions of law. *Chirila v. Ohio State Chiropractic Bd.*, 145 Ohio App.3d 589, 592, 763 N.E.2d 1192 (10th Dist.2001), citing *Steinfels v. Ohio Dept. of Commerce*, 129 Ohio App.3d 800, 803, 719 N.E.2d 76 (10th Dist.1998).

{¶19} In this case, the Drop Bar argues that because the citation did not "fix a reasonable time for the abatement of the violation," the citation is void ab initio; thus, both the Board and trial court erred in upholding the citation as valid.

{¶20} Pursuant to R.C. 3737.51(A), "no person shall knowingly violate any

provision of the state fire code or any order made pursuant to it." A person who receives a citation for a "serious violation" shall be assessed a civil penalty of $1000 for each violation; whereas a person who receives a citation for a violation "specifically determined to not be of serious nature" may be assessed a civil penalty of $1,000 for each violation. R.C. 3737.51(B) and (C). If the violations are not corrected "within the period permitted for its correction," a per day civil penalty of $1,000 may be assessed.

{¶21} Under R.C. 3737.42, once it is believed that the state fire code or an associated order has been violated, the inspector

> shall with reasonable promptness, issue a citation to the responsible person. The citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the state fire code or associated order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation.

*Id.*

{¶22} In this case, the citation issued to the Drop Bar provided that the violations were ordered to be fixed "immediately." The record demonstrates that the Board considered that the citation did not "fix" a specific time period for abatement and acknowledged that the violations were abated within 24 hours after receiving notice. Nevertheless, the Board upheld the violations but reduced the fine to $4,000, which was approximately one day's fine. The trial court found that the record supported the Board's decision due to the seriousness of the violations.

{¶23} The purpose of the abatement period is for compliance and also serves as notice to the entity being cited that if the violations are not fixed or abated within the time period provided, the city may institute an action in the common pleas court. *See* R.C.

3737.45.

{¶24} Our review of the relevant law and language of the citation reveals that if the violations are abated within the time period provided for in the citation, a fine may still be assessed against the person or entity. A person or entity who is assessed a penalty may appeal the citation and penalty to the Board. Whether the citation and penalty are upheld or whether the penalty is waived or reduced is within the discretion of the Board. This is evidenced by the language contained in the citation that a "proposed civil penalty, if any, be assessed as indicated * * *" and that the citation may be appealed. *See* R.C. 3737.43.

{¶25} In this case, the Board heard the testimony of the parties. It considered the fact that McKenna did not issue an immediate written citation on March 8 when the alleged violations were first discovered, but that George was verbally made aware that the fire captain ordered that the propane heaters could not be inside the enclosed patio. Even though George was on constructive notice, the heaters remained in the enclosed tented patio on the morning March 16 and were again visible on March 22 when the citation was taped to the Drop Bar's front door. The Board also took into consideration that the violations were abated within 24 hours after written notice was provided to the owner.

{¶26} Based on the facts, the Board recognized and determined that it was unreasonable for the city to assess a fine from March 8 until March 22 because the city did not issue the written citation until March 22. R.C. 3737.42 clearly provides that written notice is required for serious violations, which according to the testimony and citation, is what some of these violations were considered. However, the Board

determined that the Drop Bar was in violation of the fire code during this time period and therefore, the citation was upheld, but the penalty was reduced to $4,000 — approximately a one-day penalty for the violations.

**{¶27}** The record demonstrates that the Board heard the testimony, reviewed the citation, and considered the circumstances surrounding the issuance of the citation. Based on its considerations, we find nothing arbitrary or unreasonable about its decision. Likewise, we find nothing arbitrary or unreasonable with the trial court's decision affirming the Board.

**{¶28}** The assignment of error is overruled.

**{¶29}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., CONCURS;
TIM McCORMACK, J., DISSENTS   (SEE ATTACHED DISSENTING OPINION)

TIM McCORMACK, J., DISSENTING:

{¶30} I respectfully dissent. I find that the citation issued by the city of Cleveland was facially defective in that it did not conform to the statutory requirements of R.C. 3737.42. The statute requires that a citation shall be in writing and it shall fix a reasonable time for abatement of the violation.

{¶31} In this case, I find the verbal warning issued on March 8 by the fire captain, who was not in uniform and did not immediately identify himself, did not satisfy the statutory requirements with respect to notice. The city's argument that the fire captain's March 8 verbal attempt to amicably resolve the fire code violations defeats the statute's purpose of providing actual notification. If the fire code violations were serious and potentially life threatening, an actual written notice was warranted. If there had been a significant fire on the evening of March 8, what would the city say to the victims of that fire?

{¶32} On March 16, when the fire chief allegedly saw that the propane heaters had not been removed, contrary to the informal instructions he said he gave on March 8, he contacted the owner of the building that housed Drop Bar, not the owner of Drop Bar. Once again, the city did not provide written notification of the alleged violations to Drop Bar, contrary to the statutory requirements.

{¶33} Rather than issue the required written notice immediately upon becoming aware of the alleged violations on March 8, the city delayed actual notification for 14 days following the city's claimed awareness, and it ultimately provided Drop Bar with a written citation on March 22. This citation, while finally providing the statutorily required *written* notice, failed to provide Drop Bar with a specific date for compliance,

stating only that the violations be abated "immediately." This notice failed, once again, to comport with the statute. It is clear that this March 22 citation was predicated upon a perceived ignoring of earlier contacts that were so informal as to be ineffectual and not amount to fair notice.

{¶34} Accordingly, I would reverse the decision of the trial court.