URELLA, Appellee,

v.

**STATE MEDICAL BOARD OF OHIO, Appellant.**

[Cite as *Urella v. State Med. Bd.* (1997), 118 Ohio App.3d 555.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE05–706.

Decided March 6, 1997.

**556**

*DeMoisey & Smither*, and *J. Fox DeMoisey*; and *Kevin P. Byers Co., L.P.A.*, and *Kevin P. Byers*, for appellee.

*Betty D. Montgomery*, Attorney General, and *James M. McGovern*, Assistant Attorney General, for appellant.

PETREE, Judge.

Appellant, the State Medical Board of Ohio ("Ohio Board"), appeals the decision of the Franklin County Court of Common Pleas, which reversed the Ohio Board's decision to revoke the license of appellee, Dr. Rocco P. Urella, Jr., to practice medicine and surgery in the state of Ohio. The Ohio Board sets forth a single assignment of error:

"The state medical board is not required to relitigate the acts underlying another state's disciplinary action when the board elects to take disciplinary action under its bootstrapping provision, R.C. 4731.22(B)(22), and the factual basis for the other state's charges are clearly violative of R.C. 4731.22(B)(3) and (6)."

Dr. Urella obtained licensure to practice medicine and surgery in Ohio in 1990. At that time, he was also licensed to practice medicine in New York, Pennsylva-

nia, Indiana, and Kentucky. In October 1991, the New York State Board for Professional Medical Conduct ("New York Board") conducted an investigative interview with Dr. Urella concerning allegations of professional misconduct centering around the death of a woman who was alleged to be Dr. Urella's patient and close friend. The New York Board also alleged that he inappropriately prescribed controlled substances to seven patients, including the deceased woman.

In October 1991, the New York Board met with Dr. Urella informally with regard to these allegations and informed him that he would be notified within thirty days if disciplinary proceedings were to be initiated. However, no action was taken by the New York Board until August 10, 1992, at which time Dr. Urella was charged with seventeen specifications relating to the seven patients, including: (1) gross negligence in prescribing and/or furnishing controlled substances, (2) negligence on more than one occasion in issuing prescriptions for controlled substances, (3) ordering excessive treatment or use of treatment facilities not warranted by the condition of the patient, (4) abandoning or neglecting a patient in need of immediate professional care without making reasonable arrangements for the continuation of such care, and (5) failing to maintain a record for each patient that accurately reflects the evaluation and treatment of the patient.

At the time the charges were initiated, Dr. Urella was living and practicing medicine in Kentucky. His New York medical license was then inactive. On the advice of counsel, Dr. Urella applied to New York to voluntarily surrender his license rather than defend against the charges. The application acknowledged that he had been charged with seventeen specifications of professional misconduct and indicated that the application was made "on the grounds that I agree not to contest the specifications of professional misconduct set forth in the charges." Included in the application to surrender was Dr. Urella's statement explaining that he agreed to plead no contest to the charges because he did not wish to come to New York to contest the allegations, as he no longer had need for a New York license; he did not want to expend the time or money to defend against the allegations; he would have considerable difficulty collecting the necessary defense evidence seven years after the events in question; and he did not want to cause pain for himself or the deceased's family in resurrecting the events leading up to the woman's death. He also specifically noted the following:

"I want to make clear that in [pleading no contest] I am not admitting fault in any manner. By pleading nolo contendere, I am only saying to the Board that I do not wish to fight the charges; I am making no admission of wrongdoing. * * *

"In these circumstances, agreeing to voluntarily surrender my New York license, with the understanding that I can reapply after one year, seems to be a fair and sensible resolution of this matter."

By order dated October 1, 1992, the New York Board accepted Dr. Urella's application for voluntary surrender of his license and the associated provisions which included, by exhibit, the statement of charges and Dr. Urella's statement. The New York Board prohibited him from reapplying for licensure for one year from the date of the order and struck his name from the roster of physicians in the state of New York. However, the New York Board made no separate findings or conclusions concerning whether or not the allegations made in the statement of charges were true or proved.

By letter dated December 8, 1993, Dr. Urella was notified that the Ohio Board proposed that disciplinary action be taken against him based on the New York order of October 1, 1992. The Ohio Board predicated its action upon R.C. 4731.22(B), which states that the Ohio Board may take disciplinary action against a licensee when there exists "[t]he limitation, revocation, or suspension by another state of a license or certificate to practice issued by the proper licensing authority of that state, the refusal to license, register or reinstate an applicant by that authority, or the imposition of probation by that authority, for an action that would also have been a violation of this chapter, except for nonpayment of fees." R.C. 4731.22(B)(22). The Ohio Board alleged that the New York Board's action in accepting Dr. Urella's application to surrender his license and striking his name from New York's roster of physicians constituted "the limitation, revocation, or suspension" of Dr. Urella's license to practice medicine issued by another state. The Ohio Board further alleged that the New York Board's action was based on conduct that would warrant revocation under R.C. 4731.22(B)(3), for "[s]elling, prescribing, giving away, or administering drugs for other than legal and legitimate therapeutic purposes," and under R.C. 4731.22(B)(6), for "[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established."

Unlike the manner in which Dr. Urella resolved the New York disciplinary proceedings, Dr. Urella requested a hearing concerning the charges in Ohio. At this hearing, the board presented no evidence other than the documentation of the New York action, including the New York Board's statement of the charges, Dr. Urella's application to surrender his license and his statement in response to the charges, and the October 1, 1992 order.

At the hearing, Dr. Urella offered testimony disputing the New York Board's allegations. More specifically, Dr. Urella testified that the deceased woman had worked for him and two other physicians in the 1980s and had access to his

signature stamp as well as all three physicians' prescription pads. Dr. Urella had reported stolen prescription pads, accounting for approximately two hundred prescriptions, to the Drug Enforcement Agency in 1982 and 1984. Dr. Urella speculated that the woman had stolen the blank prescriptions and had used his signature stamp to obtain drugs. These suspicions were supported by his testimony that police found blank prescriptions and his signature stamp in the home of the deceased woman.

He further testified that when the New York Board conducted its investigative interview with him, he was shown names of patients for whom he had allegedly written prescriptions. However, he could only acknowledge the identity of the deceased woman. None of the other people identified had been his patient; indeed, he did not even recognize any of the other names. He also explained to the investigator that he had lived and worked in Pennsylvania when a number of the prescriptions were written.

Dr. Urella further testified as to his involvement with the deceased woman on the day of her death in March 1985. While visiting her at her home, Dr. Urella found her lying on the bed with some pills clenched in her hand. He ordered the woman's stepdaughter to call 9–1–1 as he began emergency medical procedures. He continued with his attempts to revive her for approximately fifteen minutes until the emergency squad arrived. However, the woman was pronounced dead at the hospital, apparently the victim of a drug overdose.

Dr. Urella further testified that the New York Board's investigation and its ultimate charges were based upon a complaint filed by the woman's sister. He stated that he successfully pursued a settlement of the New York Board's charges by submitting an application to surrender his medical license because he was on inactive status and had no intention of using his New York license. In addition, he reiterated many of the reasons for surrendering his license previously made in his statement in response to the New York charges. He elected to defend against the board's charges in Ohio because of the risk associated with Ohio disciplining his medical license in a manner that would be reported to the National Practitioner Data Bank.

The hearing examiner concluded that, although the order entered by the New York Board constitutes "[t]he limitation, revocation, or suspension by another state of a license or certificate to practice issued by the proper licensing authority of that state," as that phrase is used in R.C. 4731.22(B)(22), the Ohio Board failed to prove that the actions underlying the New York Board's disciplinary action would have violated R.C. 4731.22(B)(3) and (6). The hearing examiner premised this conclusion on the bases that Dr. Urella indicated that he did not admit responsibility for any specified professional misconduct, that the New York Board made no findings of fact or conclusions of law regarding the allegations and did

not assign Dr. Urella with responsibility for the violations, and that Dr. Urella appeared before the Ohio Board and offered "a compelling explanation of the events and circumstances which precipitated the New York disciplinary proceedings." In short, the hearing examiner concluded that, since no evidence was presented to rebut Dr. Urella's defense and reliance was placed solely on the legal documentation entered in the New York disciplinary proceedings (which contained only allegations, found no actual violations and included no admission of wrongdoing), there was a failure to establish that the actions underlying the New York Board's disciplinary action would have violated R.C 4731.22(B)(3) and (6). Therefore, the hearing examiner recommended that the matter against Dr. Urella be dismissed.

After considerable deliberation, the Ohio Board remanded the matter to the hearing examiner for the submission of legal briefs addressing whether the Ohio Board could properly pursue disciplinary action against a practitioner under R.C. 4731.22(B) if the sister state did not make findings of fact or obtain an admission of wrongdoing from the practitioner prior to imposing discipline. The hearing was reopened, and counsel for both parties submitted legal briefs on the issue.

Upon remand, the hearing examiner again recommended dismissal, finding that, although the New York Board did take formal disciplinary action against Dr. Urella that would fall under the purview of R.C. 4731.22(B)(22), the Ohio Board needed more than allegations on which to determine that Dr. Urella committed acts in another state that would be considered as violative of R.C. 4731.22(B)(3) and (6).

Ultimately, the Ohio Board agreed that the New York Board's order constituted "the limitation, revocation, or suspension" of Dr. Urella's license by a sister state, but rejected the hearing examiner's conclusion that the state failed to prove that Dr. Urella's conduct in New York would constitute violations of R.C. 4731.22(B)(3) and (6) if committed in Ohio. Accordingly, the Ohio Board ordered the permanent revocation of Dr. Urella's license to practice medicine in Ohio.

Dr. Urella appealed the Ohio Board's decision to the Franklin County Court of Common Pleas, which reversed the Ohio Board's decision. The Ohio Board timely appeals.

■ The standard of review applicable to an administrative agency such as the board is to determine if the board's decision is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12; *Korn v. Ohio State Medical Bd.* (1988), 61 Ohio App.3d 677, 682, 573 N.E.2d 1100, 1104.

■ The Ohio Board argues that it can utilize R.C. 4731.22(B)(22) to discipline Dr. Urella, even if the New York Board did not make findings of fact or obtain an admission of wrongdoing. The Ohio Board premises its argument on the legal

effect of Dr. Urella's not having contested the charges brought against him in New York, noting that as part of his application to surrender, he "agreed to plead no contest to the charges." The Ohio Board analogizes Dr. Urella's agreement not to contest the charges to a plea of no contest in a criminal proceeding.

The Ohio Board asserts that, pursuant to Crim.R. 11(B)(2), a no contest plea is not an admission of guilt, but is an admission of the truth of the factual allegations set forth in the indictment, information or complaint. The Ohio Board further argues that while a plea of no contest is generally inadmissible in a subsequent civil or criminal proceeding, federal law acknowledges that a no contest plea is admissible in administrative proceedings. Further, the Ohio Board contends that, although Dr. Urella refused to admit guilt to the charges brought against him in New York, he did not challenge the factual allegations and, in doing so, in effect admitted the truthfulness of the allegations.

Dr. Urella argues that under New York law, an agreement not to contest an administrative charge of professional wrongdoing is not equivalent to a criminal no contest plea. In *Halyalkar v. Bd. of Regents of New York* (1988), 72 N.Y.2d 261, 532 N.Y.S.2d 85, 527 N.E.2d 1222, a physician had, in response to the New Jersey Board of Medical Examiners' ("New Jersey Board") charges of professional misconduct, entered a "guilty plea" pursuant to that board's rules. He then negotiated a settlement with the New Jersey Board which included merely a recitation of the guilty plea. The New Jersey Board did not make any findings, and the physician did not make any further admissions regarding the charges. The court noted that a settlement negotiated with an administrative agency which does not include an admission of guilt or waiver of rights is different from a formal criminal court proceeding which "follow[s] a thorough allocution establishing that the defendant understands the rights he is waiving and that he has admitted each of the essential elements of the crime charged." *Id.* at 269, 532 N.Y.S.2d 85, 527 N.E.2d 1222. Under *Halyalkar*, an administrative guilty plea does not effectuate an admission of the factual allegations. Instead, there must be a clearly delineated admission or waiver of rights.

Thus, under the rule established by *Halyalkar*, the New York Board would not have regarded Dr. Urella's agreement not to contest the charges of professional misconduct as an admission of the truth of the charges. The Ohio Board argues that the effect of a no contest plea in an administrative proceeding under New York law is not applicable to the proceeding in Ohio. We find this argument unpersuasive. Dr. Urella entered into the agreement not to contest the charges in New York, not in Ohio. We must assume that Dr. Urella was aware of controlling New York law on this subject at the time he entered into the agreement and would not have done so had he thought that the agreement would have been construed as an admission of the truth of the charges.

Moreover, in his statement submitted as part of his application to surrender, he specifically stated that his agreement not to contest the New York Board's charges was not an admission of the facts or an admission of culpability; rather, his plea of *nolo contendere* was merely a method of informing the New York Board that he would not appear to defend against the charges. The New York Board accepted Dr. Urella's application to surrender his medical license without modification and without a hearing on the merits. The issue of whether or not Dr. Urella committed any of the acts for which he was charged was neither argued on the merits, conceded by Dr. Urella, nor even addressed in the New York Board's order. This, it cannot be fairly said that the application, on its face, constituted an admission of the truthfulness of the facts alleged.

Furthermore, Dr. Urella came to Ohio to defend the charges brought against him here. He presented evidence that he did not commit the violations alleged in the New York Board's charges; that evidence was unrebutted. As noted previously, the only evidence presented in rebuttal was the documentation from the New York action, which, we have determined, does not constitute an admission of the truth of the facts alleged or an admission of culpability.

Therefore, we find that there was absolutely no reliable, probative and substantial evidence to support the Ohio Board's conclusion that the actions upon which the New York disciplinary action was based would have constituted violations of R.C. 4731.22(B)(3) and (6). Under the circumstances of this case, the New York Board's statement of charges amounts to nothing more than unsubstantiated and unproven allegations. Ohio cannot discipline Dr. Urella based on these unsubstantiated allegations, especially in light of Dr. Urella's appearance and denial of the charges before the Ohio Board and the failure to present any evidence in rebuttal. Accordingly, the Ohio Board's single assignment of error is not well-taken.

For the foregoing reasons, the State Medical Board of Ohio's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, J., concurs.

DESHLER, J., concurs separately.

DESHLER, Judge, concurring separately.

I write separately, to supplement the decision rendered today and comment on a procedural difficulty involved in this case. The common pleas court correctly concluded that (1) the State Medical Board was required to establish that Dr.

Urella's New York license had been disciplined, and (2) that the action upon which the Ohio Medical Board's decision was based would likewise have constituted a violation of the Ohio Medical Practices Act. The State Medical Board previously concluded the following:

"The Board concludes that Dr. Urella's surrender of his New York Medical license, under charge from the New York Board of seventeen (17) specific violations of the New York Medical Practices Act, involving actions that would have in many, if not all, such instances constituted a violation of Ohio's Medical Practices Act, is tantamount to the 'limitation, revocation, or suspension by another state of a license or certificate to practice issued by the proper licensing authority of that state * * * for an action that also would have been a violation of this chapter, except for nonpayment of fees.' "

A threshold issue in this case is whether Dr. Urella's surrender of his New York license is legally tantamount to a disciplinary action. I do not believe that a surrender of license, under the circumstances here involved, is tantamount to a disciplinary action. While such conduct by a licensee might appear to be the result of a disciplinary action, an express denial of any wrongdoing by the practitioner, in the absence of proof of specific charges, does not equate to proof of violation of law in another state that, if carried out in Ohio, would constitute a violation of the Ohio Medical Practices Act. The Ohio Medical Board's decision on the record before us is not supported by either probative or substantial evidence, as there can be no legal determination of wrongdoing without evidence. The allegations of wrongdoing or charges, in whatever form, do not in themselves rise to the level of proof or evidentiary findings of wrongdoing. Since the original proceedings in New York involved no admission of misconduct and there was no adjudication of misconduct, there could be no such conclusion reached by the Ohio Medical Board in the absence of specific evidentiary findings that the alleged wrongful conduct in New York actually occurred.

Part of the problem in this case is the Ohio Medical Board's urging of a strained interpretation of a no contest plea entered by the doctor, with acceptance of denial, as allowed in New York. The difficulty of this procedural posture and the problem for the Ohio Medical Board is that New York allows the surrender of the license, accepts a denial of charges, and makes no findings of wrongdoing. The record upon which the Ohio Medical Board's action is founded is upon a case where charges are answered by the doctor but remain pending in an unproven status. There should then be no inference taken from these circumstances for the benefit of or to the detriment of either party. To put it another way, the doctor could argue there is no inference of wrongdoing and the state of New York could argue there is an inference of guilt or there would be need to surrender the license. But there could be a surrender of the medical

license without any charges of wrongdoing. We are thus back to the ultimate defect in this case from the standpoint that in the absence of an affirmative disciplinary action by the New York Board, and the absence of any evidence in the record establishing actual wrongdoing, the charges are not a conclusive determination sufficient to support a disciplinary action in Ohio. There is, therefore, an absence in this case of reliable, substantive and substantial proof upon which the Ohio Medical Board based its decision. The judgment of the Franklin County Court of Common Pleas should accordingly be affirmed.