OPINION
{¶ 1} Appellant, Kenneth W. Haver, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the Accountancy Board of Ohio ("accountancy board") that revoked appellant's certificate as a certified public accountant ("CPA"). Because the common pleas court did not abuse its discretion by affirming the accountancy board's order, we affirm the judgment of the common pleas court.
 {¶ 2} Appellant is the former chief financial officer for Telxon Corporation. According to appellant, in December 1998, alleging violations of the Securities Exchange Act of 1934, Telxon shareholders sued Telxon, appellant, and the corporation's former chief executive officer in federal district court. Later, according to appellant, in May 2001, separate suits were brought against PricewaterhouseCoopers LLP, Telxon's outside auditors. In March 2002, claiming appellant violated the Securities Exchange Act of 1934, the United States Securities and Exchange Commission ("SEC") sued appellant in federal district court and sought a permanent injunction and a civil penalty against appellant. Thereafter, appellant and the SEC entered into an agreement related to the SEC's suit against appellant. Appellant also consented to an administrative order wherein the SEC suspended appellant's privilege to appear or practice before the SEC as an accountant for five years with a right to apply for reinstatement at the expiration of the five-year period.
 {¶ 3} Subsequently, by letter dated December 20, 2002, the accountancy board proposed disciplinary action against appellant, pursuant to R.C. 4701.16(A)(8), after receiving a copy of the SEC's order of suspension concerning appellant.
 {¶ 4} After granting several continuances, the accountancy board held an administrative hearing to consider the matter. Thereafter, the accountancy board found that appellant violated R.C. 4701.16(A)(8), and it issued an order revoking appellant's CPA certificate. From this order, appellant appealed to the common pleas court, which affirmed the accountancy board's order. From the common pleas court's judgment, appellant now appeals.
 {¶ 5} Appellant assigns four errors for our consideration:
1. The Lower Court abused its discretion when finding that by allegedly failing to repeat his numerous previous requests for a continuance on grounds of procedural due process at his hearing, Appellant waived any right to raise this issue on appeal.
2. The Lower Court abused its discretion when finding that Appellant made no showing of prejudice from any inability to use evidence and when finding that Appellant failed to provide any description of evidence that he would have offered or how it would have been material to this case.
3. The Lower Court abused its discretion when failing to consider that present restrictions on Appellant's opportunity to present evidence to the Board imposed by protective orders entered in related securities litigation deprived Appellant of a meaningful opportunity to be heard before the Board.
4. The Lower Court erroneously held that under R.C. §4701.16(A) the Board may impose discipline on the basis of suspension of practice before the SEC in the absence of a finding, based on reliable, probative, and substantial evidence, that the suspension occurred for cause.
 {¶ 6} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, 280; Our Place, Inc. v. OhioLiquor Control Comm. (1992), 63 Ohio St.3d 570, 571 (defining reliable, probative, and substantial evidence).
 {¶ 7} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204,207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 8} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio explained:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621.
 {¶ 9} An appellate court does, however, have plenary review of questions of law. Chirila v. Ohio State Chiropractic Bd.
(2001), 145 Ohio App.3d 589, 592, citing Steinfels v. Ohio Dept.of Commerce, Div. of Securities (1998), 129 Ohio App.3d 800,803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 10} R.C. 4701.16(A) provides, in relevant part:
After notice and hearing as provided in Chapter 119. of the Revised Code, the accountancy board may discipline as described in division (B) of this section a person holding * * * a CPA certificate * * * for any one or any combination of the following causes:
* * *
(8) Suspension or revocation of the right to practice before any state or federal agency[.]
 {¶ 11} Division (B) of R.C. 4701.16 provides, in relevant part:
For any of the reasons specified in division (A) of this section, the board may do any of the following:
(1) Revoke, suspend, or refuse to renew any CPA certificate * * *;
* * *
(3) Publicly censure * * * a holder of a CPA certificate * * *;
(4) Levy against * * * a holder of a CPA certificate * * * a penalty or fine not to exceed five thousand dollars for each offense. Any fine shall be reasonable and in relation to the severity of the offense.
 {¶ 12} Pursuant to R.C. 4701.16(A)(8) and (B)(1), the accountancy board may revoke a CPA certificate if the CPA certificate holder's right to practice before a federal or state agency has been suspended or revoked. Here, the evidence supports a finding that the SEC suspended appellant for five years from appearing or practicing before the SEC as an accountant, and there is evidence that appellant held a CPA certificate in Ohio. Because there is evidence that appellant's right to practice before the SEC, a federal agency,[1] was suspended, the accountancy board properly could find a violation of R.C.4701.16(A)(8) and had authority to revoke appellant's CPA certificate under R.C. 4701.16(B)(1).
 {¶ 13} However, in his fourth assignment of error, appellant asserts that, absent reliable, probative, and substantial evidence that a suspension occurred for cause, the common pleas court's affirmance of the accountancy board's order was error.
 {¶ 14} R.C. 4701.16(A)(8) provides that the accountancy board may discipline a person holding a CPA certificate for "[s]uspension or revocation of the right to practice before any state or federal agency." The plain language of R.C.4701.16(A)(8) does not require that the right to practice before any state or federal agency must have been suspended or revoked for cause.
 {¶ 15} "The polestar of construction and interpretation of statutory language is legislative intention." State ex relFrancis v. Sours (1944), 143 Ohio St. 120, 124. When construing a statute, a court must determine the legislative intent by examining the language used in the statute and the purpose to be accomplished. In re Burchfield (1988), 51 Ohio App.3d 148, 152, citing Henry v. Central Natl. Bank (1968), 16 Ohio St.2d 16, paragraph one of the syllabus; Featzka v. Millcraft Paper Co.
(1980), 62 Ohio St.2d 245, 247.
 {¶ 16} "In determining the legislative intent of a statute `it is the duty of this court to give effect to the words used (in a statute), not to delete words used or to insert words notused.'" Wheeling Steel Corp. v. Porterfield (1970),24 Ohio St.2d 24, 28, quoting Columbus-Suburban Coach Lines v. Pub.Util. Comm. (1969), 20 Ohio St.2d 125, 127. (Emphasis sic.) "[C]ourts do not have authority to ignore the plain and unambiguous language under the guise of judicial interpretation, but rather in such situations the courts must give effect to the words used." In re Burchfield, at 152, citing Dougherty v.Torrence (1982), 2 Ohio St.3d 69, 70; Ohio Dental HygienistsAssn. v. Ohio State Dental Bd. (1986), 21 Ohio St.3d 21, 23;State v. Krutz (1986), 28 Ohio St.3d 36, 38, certiorari denied (1987), 481 U.S. 1028, 107 S.Ct. 1953. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus.
 {¶ 17} "No clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous." State v.Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, at ¶ 11. "When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to ascertain its meaning." Id., citing Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11, reconsideration denied,100 Ohio St.3d 1548, 2003-Ohio-6789. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." Porterfield, at ¶ 11.
 {¶ 18} Here, we cannot conclude that a definitive meaning of R.C. 4701.16(A)(8) and (B)(1) proves elusive. The plain language of R.C. 4701.16(A)(8) and (B)(1) conveys a clear and definite meaning; namely, that the accountancy board may discipline a person holding a CPA certificate for suspension or revocation of the right to practice before any state or federal agency. For this court to construe R.C. 4701.16(A)(8) as requiring that such a suspension or revocation must be for cause would require us to impermissibly insert words not used in the statute. WheelingSteel Corp., supra, at 28, quoting Columbus-Suburban CoachLines, supra, at 127.
 {¶ 19} Furthermore, we do not conclude that our interpretation of R.C. 4701.16(A)(8) and (B)(1) that permits the accountancy board to discipline a holder of a CPA certificate solely for a suspension or revocation of the right to practice before any state or federal agency is inconsistent with the purpose of R.C. 4701.16, even if such suspension or revocation of the right to practice before any state or federal agency was the result of an agreement wherein allegations of culpability were neither admitted nor denied as is the case here.
 {¶ 20} Through R.C. 4701.16, the General Assembly has provided the accountancy board with authority to discipline a holder of a CPA certificate for failing to maintain a high standard of integrity and dignity. See, generally, R.C. 4701.03
(authorizing the accountancy board, among other things, to adopt rules establishing and maintaining a high standard and dignity in certificate holders). Whether R.C. 4701.16(A)(8) should require that a suspension or revocation of the right to practice before any state or federal agency should be for cause before the accountancy board may impose discipline is a matter of public policy. However, "[t]he judiciary is not the policy-making branch of the government and is not at liberty to usurp that function; if a new principle of law is laudable or advisable on the ground that it would serve public policy, it is, in the first instance, an issue for the General Assembly." Zivich v. Mentor SoccerClub, Inc. (Apr. 18, 1997), Lake App. No. 95-L-184, affirmed on other grounds by, 80 Ohio St.3d 367, citing Meyer v. Parr
(1941), 69 Ohio App. 344, 350-351. "If the courts are to be involved at all, then it should be up to the Supreme Court to set public policy in the absence of a legislative pronouncement on the issue." Zivich, supra, citing James A. Keller, Inc. v.Flaherty (1991), 74 Ohio App.3d 788, 792.
 {¶ 21} Before this court and for the first time in appellant's appeal proceedings, appellant asserts that it is unconstitutional to interpret R.C. 4701.16(A)(8) and (B)(1) as permitting the accountancy board to discipline a holder of a CPA certificate solely for a suspension or revocation of the right to practice before any state or federal agency, absent a finding of misconduct by a state or federal agency that issued the suspension or revocation. The gravamen of appellant's contention is that permitting such an interpretation of R.C. 4701.16(A)(8) and (B)(1) is tantamount to permitting the state to arbitrarily deprive appellant of a protected property interest.
 {¶ 22} "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity." State v.1981 Dodge Ram Van (1988), 36 Ohio St.3d 168, 170. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, syllabus. See, also, App.R. 12(A)(2) (providing that an appellate court may disregard an assignment of error if the party raising it "fails to argue the assignment separately in the brief, as required under App.R. 16(A)"). But, see, In reM.D. (1988), 38 Ohio St.3d 149, syllabus (holding that the waiver doctrine in Awan is discretionary and that "[e]ven where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it").
 {¶ 23} Here, appellant's fourth assignment of error does not advance a claim that R.C. 4701.16 is unconstitutional on its face or that R.C. 4701.16(A)(8) and (B)(1) were unconstitutionally applied as to defendant. Rather, appellant challenges whether reliable, probative, and substantial evidence supports the common pleas court's affirmance of the board's revocation order in the absence of a finding that appellant's suspension by the SEC was for cause.
 {¶ 24} Accordingly, having failed to raise the constitutionality of R.C. 4701.16(A)(8) and (B)(1) at the first opportunity, we conclude that appellant has waived this issue for purposes of this appeal and we need not consider it here. Awan,
supra, at syllabus.
 {¶ 25} To support his fourth assignment of error, appellant also relies upon Urella v. State Med. Bd. of Ohio (1997),118 Ohio App.3d 555 (Deshler, J., concurring separately). However, appellant's reliance upon Urella is not persuasive. In 1990, Dr. Rocco Urella was granted a medical license in Ohio. At that time, Dr. Urella was also licensed to practice medicine in New York, Pennsylvania, Indiana, and Kentucky. In 1992, the New York State Board for Professional Medical Conduct charged Dr. Urella with 17 specifications relating to seven patients. These charges included allegations of gross negligence in prescribing or furnishing, or both, controlled substances; negligence in issuing prescriptions for controlled substances; ordering excessive treatment or the use of treatment facilities for patients whose conditions did not warrant such treatment; abandoning or neglecting a patient in need of immediate professional care without making reasonable arrangements for continued care; and failure to maintain adequate records that reflected the evaluation and treatment of patients.
 {¶ 26} On advice of counsel, Dr. Urella, who at the time of these charges was living in Kentucky and practicing medicine in Kentucky and whose New York medical license at that time was inactive, applied to voluntarily surrender his New York medical license rather than defend against the charges brought against him. In his application of surrender, Dr. Urella asserted that he was not admitting fault in any manner, and he pled nolo contendere. Thereafter, the New York board accepted Dr. Urella's voluntary surrender application and prohibited him from reapplying for licensure for one year. The New York board made no separate findings or conclusions concerning whether the allegations against Dr. Urella were true or proven.
 {¶ 27} Claiming that the New York board's acceptance of Dr. Urella's application to surrender his New York medical license and the striking of Dr. Urella's name from New York's roster of physicians constituted the limitation, revocation, or suspension of a license issued by another state under former R.C.4731.22(B)(22), and that the New York board's action was based upon conduct that would warrant revocation under former R.C.4731.22(B)(3) and (B)(6), the State Medical Board of Ohio thereafter sought disciplinary action against Dr. Urella. Administrative proceedings were held to consider the State Medical Board of Ohio's proposed discipline against Dr. Urella. Concluding that the New York board's action constituted a limitation, revocation, or suspension of Dr. Urella's license by another state, the State Medical Board of Ohio permanently revoked Dr. Urella's license to practice medicine in Ohio. On appeal, the common pleas court reversed the State Medical Board's order of revocation.
 {¶ 28} Finding an absence of reliable, probative, and substantial evidence to support the State Medical Board of Ohio's order, this court concluded:
* * * Under the circumstances of this case, the New York Board's statement of charges amounts to nothing more than unsubstantiated and unproven allegations. Ohio cannot discipline Dr. Urella based on these unsubstantiated allegations, especially in light of Dr. Urella's appearance and denial of the charges before the Ohio Board and the failure to present any evidence in rebuttal. * * *
Id. at 562. This court therefore affirmed the judgment of the common pleas court reversing the State Medical Board of Ohio's order of revocation.
 {¶ 29} The present case, however, is factually distinguishable from Urella. Here, the SEC suspended appellant, and the suspension constituted a disciplinary action against appellant. By contrast, in Urella, the New York board's acceptance of Dr. Urella's voluntary surrender application was not legally tantamount to a disciplinary action under the circumstances of that case. See id. at 563 (Deshler, J., concurring separately).
 {¶ 30} In Fehrman v. Ohio Dept. of Commerce, Div. ofSecurities (2001), 141 Ohio App.3d 503, this court observed that in Urella "[t]he version of R.C. 4731.22(B)(22) in effect at the time allowed the Ohio Medical Board to discipline a physician based upon discretionary actions in another state only if those actions would also have been a violation of Ohio law." Id. at 508, citing Urella, at 558. Thus, the Fehrman court concluded that Urella was based upon the specific requirement of former R.C. 4731.22(B)(22). Id. Distinguishing Urella, the Fehrman
court stated:
Unlike the statute in Urella, neither R.C. 1707.19 nor Ohio Adm. Code 1301:6-3-19(D) requires an independent finding that the conduct underlying an out-of-state disciplinary action would also be a disciplinary violation in Ohio in order for appellee to find that an applicant is not of good business repute. Under Ohio Adm. Code 1301:6-3-19(D)(7), as quoted above, an individual may be found not to be of good business repute if the individual has been the subject of prior disciplinary actions, including suspension, fine, or censure. Regardless of whether the two letters of acceptance, waiver, and consent relied upon by the trial court contained any specific findings of wrongdoing by appellant, it is undisputed that in these letters appellant consented to censures, fines, and suspensions. Consequently, the trial court did not abuse its discretion in finding that there were disciplinary actions in evidence that allowed appellee to find that appellant is not of good business repute under Ohio Adm. Code 1301:6-3-19(D)(7) and to deny his application for licensure. * * *
Id. at 508-509.
 {¶ 31} Similarly, here, unlike former R.C. 4731.22(B)(22) that was in effect in Urella, R.C. 4701.16(A)(8) does not require a finding that the conduct underlying a suspension or revocation of the right to practice before a federal or state agency would also be a disciplinary violation in Ohio. Rather, under R.C. 4701.16(A)(8) and (B)(1), for the accountancy board to impose discipline, a CPA certificate holder's right to practice before any state or federal agency need only be suspended or revoked. Accordingly, because Urella is factually distinguishable, we do not find Urella controlling or persuasive.
 {¶ 32} Additionally, appellant's reliance upon In re Apollo
(1997), 237 A.D.2d 731, 654 N.Y.S.2d 477, also is not persuasive. In Apollo, Stephen Apollo, an attorney who was licensed to practice law in New Jersey and New York, was temporarily suspended from the practice of law in New Jersey. After the suspension, the New Jersey disciplinary authorities brought a complaint against Apollo, alleging substantial conversion of trust account funds.
 {¶ 33} Thereafter, the Committee on Professional Standards in New York moved to reciprocally discipline Apollo. Denying the motion for reciprocal discipline, the Apollo court noted that "[a] prerequisite for the imposition of reciprocal discipline is the imposition of discipline by the foreign jurisdiction after a finding of misconduct." Id. at 732, citing Matter of Moed
(1993), 196 A.D.2d 906, 601 N.Y.S.2d 967. Observing that Apollo consented to voluntary suspension after an audit; there had been no finding of misconduct by New Jersey disciplinary authorities; Apollo disputed the charges against him; and Apollo appeared to challenge his consent to the suspension, the New York court denied the motion for reciprocal discipline, but ordered Apollo's immediate suspension from the practice of law, for an indefinite period, and until further order of the court.
 {¶ 34} In re Apollo also is factually distinguishable from this case. Under the plain language of R.C. 4701.16(A)(8), a finding of misconduct is not a prerequisite for the accountancy board to seek discipline against a holder of a CPA certificate; rather, under R.C. 4701.16, a CPA holder's right to practice before any state or federal agency requires only a suspension or revocation of such right for discipline to be imposed by the accountancy board. R.C. 4701.16(A)(8) does not require that a suspension or revocation before any state or federal agency must be for affirmative misconduct. Therefore, appellant's reliance upon In re Apollo is inapposite.
 {¶ 35} Relying upon Evid.R. 408,[2] appellant also contends that the SEC's suspension order, as a matter of law, was an insufficient basis for the accountancy board's revocation of appellant's CPA certificate. Appellant reasons that, because a settlement agreement between appellant and the SEC underlay the SEC's suspension order, Evid.R. 408 therefore prohibited the introduction of this suspension order for the purpose of establishing liability. See Fireman's Fund Ins. Co. v. BPS Co.
(1985), 23 Ohio App.3d 56, 62 (wherein this court stated that "Evid.R. 408 was written to limit the admissibility of an offer of compromise or of a completed compromise due to considerations that the compromise may have arisen from factors other than liability and that compromises of disputes should be encouraged as a matter of policy"). Appellant's argument, however, is not well-taken.
 {¶ 36} First, appellant failed to object to the introduction of the SEC's suspension order at the administrative hearing. (Tr. 6.) "Errors arising in the trial court, which are not called to the court's attention at a time when the error could have been corrected or avoided, are waived, absent plain error." Napieralav. Szczublewski, Lucas App. No. L-02-1025, 2002-Ohio-7109, at ¶ 25; see, also, Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121 (stating that "we have long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in waiver of the issue for purposes of appeal").
 {¶ 37} "`The plain error doctrine provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial. * * * The plain error doctrine may be utilized in civil cases only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. * * *'" Napierala, at ¶ 25, quotingLeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 124. See, also, Goldfuss, supra, at syllabus (holding that "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself").
 {¶ 38} Here, by failing to object to the introduction of the suspension order, appellant waived this issue, absent plain error. Moreover, even assuming arguendo that the accountancy board's reliance upon the SEC's suspension order was error, we do not conclude that the accountancy board's reliance upon the SEC's suspension order rises to the level of plain error.
 {¶ 39} Secondly, Evid.R. 101(A) provides that the Ohio Rules of Evidence, with some exceptions as specified in Evid.R. 101(C), govern proceedings in the courts of this state. The 1980 staff notes to Evid.R. 101(A) state: "The rules * * * apply to `court-appointed referees.' The language `court-appointed' is used because the Supreme Court cannot constitutionally extend its rule-making power to `referees' in the executive department."
 {¶ 40} Thus, because the Supreme Court of Ohio cannot constitutionally extend its rule-making power to hearing officers in the executive department, absent adoption of the Ohio Rules of Evidence by the accountancy board, whether Evid.R. 408 applies to proceedings before the accountancy board is not indisputable as a matter of law.
 {¶ 41} Accordingly, for the foregoing reasons, appellant's fourth assignment of error is overruled.
 {¶ 42} Having concluded that, under R.C. 4701.16(A)(8) and (B)(1), the accountancy board properly could discipline appellant related to appellant's five-year suspension from appearing or practicing before the SEC as an accountant, and having concluded that appellant has waived an argument that R.C. 4701.16 is unconstitutional, we now consider appellant's remaining assignments of error.
 {¶ 43} Appellant's third assignment of error asserts the common pleas court abused its discretion when it failed to consider that restrictions imposed by protective orders in related securities litigation deprived appellant of a meaningful opportunity to be heard before the accountancy board. Appellant's second assignment of error asserts that the common pleas court abused its discretion by finding that appellant failed to show prejudice from an inability to use evidence and by finding that appellant failed to provide any description of evidence that he would have proffered, or how this unavailable evidence would have been material to his case before the accountancy board. Because these assignments of error are interrelated, we will consider them jointly.
 {¶ 44} By his third assignment of error, appellant asserts he was denied procedural due process. See, e.g., Mackey v. Montrym
(1979), 443 U.S. 1, 20, 99 S.Ct. 2612 (Stewart, Brennan, Marshall, Stevens, JJ., dissenting) (observing that "the constitutional guarantee of procedural due process has always been understood to embody a presumptive requirement of notice and a meaningful opportunity to be heard before the State acts finally to deprive a person of his property"). (Emphasis sic.)
 {¶ 45} "The requirements of procedural due process apply only to the deprivation of interests encompassed by theFourteenth Amendment's protection of liberty and property." Bd. of Regentsof State Colleges v. Roth (1972), 408 U.S. 564, 569,92 S.Ct. 2701. Therefore, "[i]n a due process challenge pursuant to theFourteenth Amendment, the first inquiry is whether a protected property or liberty interest is at stake." State ex rel. Haylettv. Ohio Bureau of Workers' Comp. (1999), 87 Ohio St.3d 325, 331, citing Am. Mfrs. Mut. Ins. Co. v. Sullivan (1999), 526 U.S. 40,59, 119 S.Ct. 977; Mathews v. Eldridge (1976), 424 U.S. 319,96 S.Ct. 893.
 {¶ 46} In Korn v. Ohio State Med. Bd. (1988),61 Ohio App.3d 677, although this court did not expressly find that revocation of a license to practice osteopathic medicine and surgery implicated a protected property interest under theFourteenth Amendment to the United States Constitution, this court impliedly recognized a protected property interest was implicated when it considered appellant's claim that he was denied procedural due process under the Fourteenth Amendment to the United States Constitution. Id. at 684-685. See, also, Inthe Matter of Vaughn v. State Med. Bd. of Ohio (Nov. 30, 1995), Franklin App. No. 95APE05-645, dismissed, appeal not allowed by (1996), 75 Ohio St.3d 1449 (observing that "[i]n cases involving the revocation of a certificate to practice medicine, generally the interests are great: the state's interest in protecting the public and the physician's interest in maintaining a livelihood").
 {¶ 47} Accordingly, construing Korn and Vaughn, we conclude that the revocation of appellant's CPA certificate by the accountancy board implicates a protected property right under the Fourteenth Amendment to the United States Constitution and under Section 16, Article I, of the Ohio Constitution. SeeWalker v. State Med. Bd. of Ohio (Feb. 21, 2002), Franklin App. No. 01AP-791, citing Sorrell v. Thevenir (1994),69 Ohio St.3d 415, 422 (stating that "Ohio's Due Process Clause in Section 16, Article I, Ohio Constitution is equivalent to the Due Process Clause of the Fourteenth Amendment").
 {¶ 48} "Procedural due process requirements are flexible and vary according to a particular situation." State v. Pennington
(Jan. 29, 2002), Franklin App. No. 01AP-657, appeal not allowed,95 Ohio St.3d 1460. In Korn, this court explained that "[a] routine requirement of the Due Process Clause is `that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" Id. at 684, quoting Boddie v. Connecticut (1971), 401 U.S. 371, 379,91 S.Ct. 780. (Emphasis omitted.) See, also, Mullane v. Cent.Hanover Bank Trust Co. (1950), 339 U.S. 306, 314, 70 S.Ct. 652
(stating that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").
 {¶ 49} However, "the right to due process in an administrative proceeding is not limited to a simple right to have the hearing conform with the letter of applicable procedural regulations." Clayman v. State Med. Bd. of Ohio (1999),133 Ohio App.3d 122, 126 (Bryant, J., dissenting), dismissed, appeal not allowed, 87 Ohio St.3d 1459, construing State ex rel. OrmetCorp. v. Indus. Comm. (1990), 54 Ohio St.3d 102, 103, quotingOhio Bell Tel. Co. v. Pub. Util. Comm. of Ohio (1937),301 U.S. 292, 304-305, 57 S.Ct. 724. Rather, "[t]he crux of such a right to due process in an administrative proceeding is that `statutory procedural provisions aside, a requirement to conduct a "hearing" implies a "fair hearing."'" Clayman, at 127, quoting Ormet,
supra, at 104.
 {¶ 50} Here, appellant claims that, due to protective orders in related securities litigation, many documents involved in related securities litigation were unavailable to him at the accountancy board hearing. Therefore, appellant reasons that, because these documents were unavailable to him in the matter before the accountancy board, he was denied a meaningful opportunity to be heard. However, except for a claim that the protected documents would have assisted appellant in challenging allegations that he violated federal securities law, appellant does not show how the unavailability of these documents actually prejudiced appellant at the administrative hearing.
 {¶ 51} Even assuming arguendo that the documents covered by the protective orders would have challenged allegations that he violated federal securities law, appellant does not assert that these protected documents would have rebutted evidence of the SEC's suspension of appellant. Thus, at best, the usefulness of these protected documents would have been limited to mitigating potential discipline by the accountancy board.
 {¶ 52} Through his testimony at the hearing before the accountancy board, appellant had an opportunity to advance his contention that he did not violate federal securities law. (Tr. 9-18.) Assuming these unavailable documents would have supported appellant's testimony before the board, they would have served only as cumulative evidence.
 {¶ 53} Furthermore, at the beginning of the proceedings before the accountancy board, appellant did not claim that he could not adequately present a defense due to the unavailability of protected documents. Rather, appellant's counsel represented to the board that appellant was ready to proceed. (Tr. 6.)
 {¶ 54} Under these facts and circumstances, we cannot conclude that appellant was denied a meaningful opportunity to be heard. Furthermore, we cannot conclude that the common pleas court abused its discretion by finding that appellant failed to show prejudice from an inability to use evidence and by finding that appellant failed to provide any description of evidence that he would have proffered or how this unavailable evidence would have been material to his case before the accountancy board.
 {¶ 55} Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 56} Finally, appellant's first assignment of error asserts that the common pleas court abused its discretion when it found that appellant's failure to request a continuance at the administrative hearing constituted waiver of this issue.
 {¶ 57} In an opening statement before the accountancy board, appellant's counsel represented:
[Appellant's counsel]: But we appreciate the opportunity to come and address the issue of whether Mr. Haver should be disciplined. Certainly we don't question in any respect the jurisdiction of the Board to address this matter with the understanding that the jurisdiction says you believe that discipline is warranted. A full hearing on the evidence related to the underlying events would certainly take multiple days and many witnesses and scores of exhibits. We have no intention of going down that path today. Of course we do believe that disciplinary action shouldn't be taken without a search and examination of the evidence. These underlying transactions are going to be the subject of a jury trial probably next year. Mr. Haver's former employer has brought an action against the SI auditing company, PWC. These issues are going to be addressed at that trial. We are very confident the result of that trial will be a vindication of Mr. Haver. But we're not looking to postpone this matter any further awaiting that trial. Frankly, Mr. Haver's been barred from the company for over five years. The company's been taken over. We simply don't have access to the documentary evidence that we would need to postpone this hearing any further, really wouldn't get us anywhere. * * *
(Tr. 8-9.)
 {¶ 58} Here, through his representations to the accountancy board, appellant's counsel conveyed that appellant was ready to proceed with the administrative hearing. Based upon these representations to the accountancy board, we cannot conclude that the common pleas court abused its discretion when it concluded that, by failing to object or request a further continuance at the administrative hearing, appellant waived the issue for purposes of appeal. Appellant's first assignment of error is therefore overruled.
 {¶ 59} Accordingly, we hold the common pleas court did not abuse its discretion by finding that the accountancy board's order was supported by reliable, probative, and substantial evidence.
 {¶ 60} For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] See, generally, Section 78d(a), Title 15, U.S. Code (establishing the United States Securities and Exchange Commission). See, also, Evid.R. 201(B) and (C) (authorizing a court to take discretionary judicial notice of a fact that is not subject to reasonable dispute in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").
[2] Evid.R. 408 provides:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.